IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARIE NIVEN-HIMES,<br>    Plaintiff,<br><br>   v.<br><br>THE PENNSYLVANIA HOSPITAL OF THE UNIVERSITY OF PENNSYLVANIA HEALTH SYSTEM, *et al.*<br>    Defendants. | Civil No. 2:20-cv-00558-JMG |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                        **November 15, 2021**

**I. OVERVIEW**

   After thirty-seven years of employment as a clinical nurse at The Hospital of the University of Pennsylvania ("HUP"), Plaintiff Maria Niven-Himes was fired for allegedly falsifying her time sheet. Plaintiff claims Defendants discriminated against her based on her age and disability and that her firing violated the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), the Family and Medical Leave Act ("FMLA"), the Pennsylvania Human Relations Act ("PHRA"), and the Philadelphia Fair Practices Ordinance ("PFPO"). Before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, the Court grants the motion in part and denies it in part.

**II. BACKGROUND AND ALLEGATIONS**

   On June 25, 2019, Plaintiff was fired from her job at HUP. Defs.' Statement of Facts ("DSOF") ¶¶ 1, 61, ECF No. 24-2; Pl.'s Resp. to Defs.' Statement of Facts ("PRSOF") ¶¶ 62-64, ECF No. 29. Plaintiff worked at HUP as a clinical nurse from 1982 until her termination in 2019. DSOF ¶ 1; Pl's Counterstatement of Facts ("PCOF") ¶¶ 4-5, ECF No. 29. Nurses at HUP, including

Plaintiff, were required to complete online continuing education courses. DSOF ¶ 3; PCOF ¶ 94(a). They were permitted to complete these online courses at the hospital on a work computer or at home. DSOF ¶¶ 7-8; PCOF ¶ 94(b). The nurses were entitled to payment for their time taking the courses only if the courses were completed at home. DSOF ¶ 9; PCOF ¶ 94(b).

In June 2019, Plaintiff submitted a request to HUP for six hours of payment for taking an online course at home. DSOF ¶ 22; PCOF ¶ 94(c). Defendants claim Plaintiff completed this training at the hospital on a work computer and deceptively tried to be paid by saying she took the course at home. DSOF ¶ 21; PCOF ¶ 93. Plaintiff denies intentional misrepresentation and says she took the course remotely at home, but due to computer "freezing" problems had to complete the course at work on a work computer. PCOF ¶ 94(d)(e).

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is properly granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are material if they "might affect the outcome of the suit under the governing law." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute as to those facts is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (quoting *Anderson*, 477 U.S. at 248). "We view all the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Id.* (internal quotation marks and citation omitted).

The party moving for summary judgment must first "identify [] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

IV.  **DISCUSSION**

Plaintiff claims that her firing amounted to employment discrimination. She brings "discrimination," "failure to accommodate," "hostile work environment," and "retaliation" claims under the ADA; "discrimination" and "hostile work environment" claims under the ADEA; and "interference" and "retaliation" claims under the FMLA. Am. Compl. ¶¶ 32-36, 42-46, 52, ECF No. 38. The Court first analyzes Plaintiff's ADA claims then continues to her ADEA and FMLA claims.

A.  **ADA Analysis**

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). "[A]n employer can unlawfully discriminate within the meaning of the ADA in two different ways: (1) if the employer takes adverse action against a qualified individual with a disability and that decision was motivated by the individual's actual disability or the employer's belief that the individual had a disability (i.e. disparate treatment); or (2) if the employer fails to make reasonable accommodations for that individual." *Isley v. Aker*

*Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 626 (E.D. Pa. 2017). Plaintiff raises claims under both theories.[1]

Disability discrimination claims proceed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 270 (3d Cir. 2010). If the plaintiff carries this burden, the defendant must "offer evidence of a legitimate, nondiscriminatory reason for the action." *Id.* at 271. Finally, the burden shifts back to the plaintiff to "show by a preponderance of the evidence that the [defendant's] explanation is pretextual." *Id.* (citation omitted).

### a. ADA Disparate Treatment

Plaintiff claims she was subjected to disparate treatment because of her disabilities.[2] Am. Compl. ¶ 43. "[T]o establish a *prima facie* case of disparate treatment under the ADA a plaintiff must show: (1) [s]he is a disabled person within the meaning of the ADA; (2) [s]he is otherwise

---

[1] Plaintiff brings identical claims under the ADA, ADEA, and their state and municipal counterparts the PHRA and PFPO. These claims are closely related and will be analyzed concurrently; resolution of Plaintiff's ADA and ADEA claims also resolve her PHRA and PFPO claims. *See e.g. Isley*, 275 F. Supp. 3d at 635 n.6.; *Taylor v. Phoenixville Sch. Dist.,* 184 F.3d 296, 306 (3d Cir. 1999) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)) (The "analysis of an ADA claim applies equally to a PHRA claim.") *Hollingsworth v. R. Home Prop. Mgmt., LLC*, 498 F. Supp. 3d 590, 611 (E.D. Pa. 2020) ("The PHRA is basically the same as the ADA in relevant respects and Pennsylvania courts generally interpret the PHRA in accord with its federal counterparts."); *Matero v. Chipotle Mexican Grill, Inc.,* 2018 U.S. Dist. LEXIS 160716, at *17 n.1 (E.D. Pa. Sept. 20, 2018) ("This Court has interpreted the ADA, PHRA, and PFPO to apply to employment discrimination claims in a similar fashion."); *Ngai v. Urban Outfitters, Inc.,* 2021 U.S. Dist. LEXIS 59211, at *23 (E.D. Pa. March 24, 2021) ("Because such claims [ADEA, PHRA and PFPO] are analyzed under similar legal frameworks, they will be considered together as appropriate."); *id.* ("We do not distinguish between the claims under federal and Pennsylvania law in our disposition of the cases as. . . the standards are the same for purposes of determining the summary judgment motion.")

[2] Plaintiff claims the disabilities of cancer, heart arrhythmia, and a knee injury. Am. Compl. ¶¶ 21, 23-24, 38.

4

qualified to perform the essential functions of her job with or without reasonable accommodations by the employer; and (3) [s]he suffered an adverse employment action because of her disability." *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 734 (E.D. Pa. 2019) (citing *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)).

Defendants only dispute element three, denying that decisionmakers knew about or were motivated to fire Plaintiff because of her disability. Defendants argue that Mr. Umile, the human resource manager who participated in the decision to terminate Plaintiff, had no knowledge of Plaintiff's medical conditions. But Umile allegedly told Plaintiff she was a "medical risk" within days of her termination. PRSOF ¶ 113. In addition, Umile received emails mere months before Plaintiff's termination which discussed Plaintiff's health issues and leave and accommodation requests. Defs.' App'x ("D.A.") 1381-1382, 1390-1391, ECF No. 24-8. This evidence could lead a reasonable fact finder to find that Umile did know about Plaintiff's disability and that her disability played a role in her termination. Therefore, Plaintiff has satisfied element three of her *prima facie* case.

Defendants then argue that they had a legitimate, nondiscriminatory reason to terminate Plaintiff. They argue that Plaintiff's termination was "entirely consistent with the[ir] policy and was based solely on Plaintiff's falsification of her timesheet." Defs.' Memo. of L. in Supp. of Mot. for Summ. J. ("MSJ") 12, ECF No. 24-1. However, the record includes comments from colleagues and managers referencing Plaintiff's age and/or disability, disparate treatment, and the timing of her termination within several months of her cancer disclosure. Pl.'s Brief in Opp. to Defs.' Mot. for Summ. J. ("PBOSJ") 16-18, ECF No. 29-1.

5

Also, Plaintiff's supervisor, Ms. Woods, contacted Mr. Russo,[3] for an Audit Report detailing the dates, times, and duration of Plaintiff's access to the online learning system. Depo. Tran. of Russo, ("Russo Dep.") D.A. A0358 at 21:18-23, A0378 at 41:1-20, ECF No. 24-6. Defendants argue that the Audit Report validates Plaintiff's termination. MSJ 24. However, Russo reports that Woods had never before asked him for information about a nurse's access to the system, and that other users of the system, including himself, had experienced computer freezing problems. Russo Dep. D.A. A0353 at 16:3-8, A0356 at 19:20-23. Russo also said it is not always possible to determine the duration of one's access to some of the educational modules. Russo Dep. D.A. A0369 at 32:2-4, A0377 at 40:1-6, A0384 at 47:7-20.

Considering the "medical risk" comment made by Umili to Plaintiff within days of her termination, the existence of emails to Umile regarding Plaintiff's medical issues, the computer freezing concerns, Russo's comments bringing into question the accuracy of the computer data, the Audit Report that allegedly validates the firing, and Plaintiff's thirty-seven year career with HUD with no other dishonesty allegations; the Court finds that Plaintiff has met her burden of showing pretext and there is enough of a factual dispute to survive summary judgment on the ADA disparate treatment claim.

### b. ADA Failure to Accommodate

Plaintiff claims that Defendants refused her reasonable requests for accommodations and discriminated against her for making those requests. Am. Compl. ¶¶ 43, 44. The ADA provides that an employer discriminates against a qualified individual with a disability when the employer does "not make reasonable accommodations to the known physical or mental limitations" of the

---

[3] Mr. Russo is the "Learning Management and Curriculum Architect" who oversees the Learning Management System for Penn's Health System. Russo Dep. D.A. A0344 at 7:5-8.

individual unless the employer can demonstrate that the "accommodation would impose an undue hardship on the operation of the business" of the employer. 42 U.S.C.S. § 12112(b)(5)(A); *see also Johnson v. McGraw-Hill Companies*, 451 F. Supp. 2d 681, 701 (W.D. Pa. 2006).

"Reasonable accommodations" are defined as "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). A reasonable accommodation further includes the employer's reasonable efforts to assist the employee and communicate with the employee in good faith, under what has been termed a duty to engage in the "interactive process." *See Molyneaux v. Monroe Cty.,* 2020 U.S. Dist. LEXIS 2563, at *17 (M.D. Pa. Jan. 8, 2020).

To establish a *prima facie* claim of failure to accommodate, a plaintiff must show that (1) "[s]he was disabled, and her employer knew it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated." *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). Defendants dispute elements three and four, arguing that Plaintiff was properly denied accommodations because she failed to provide the necessary documentation. MSJ 19.

On April 5, 2019, Plaintiff asked for an accommodation, requesting adjusted hours for appointments or treatment and reassignment for a six-month period to a less physically demanding position. D. A. 0071-0076. On April 18, 2019, The Health System Disability Department at Penn Medicine ("Penn") sent Plaintiff a letter saying it needed additional information from her doctor within ten days (by April 28, 2019) in order to consider her request. D.A. A0060-A0070. Plaintiff

did not receive this letter until April 24, 2019.[4] PCOF ¶¶ 81, 83. Having just four days to procure another doctor's appointment and the necessary documentation, Plaintiff contacted Penn to request a short time extension. PCOF ¶ 84. Penn, noting no extenuating circumstances, denied this request and subsequently denied Plaintiff's accommodation petition. PCOF ¶ 86.  Depo. Tran. of Ms. Arroyo, ("Arroyo Dep.") D.A. A1059 at 84:1-24, A1064 at 89:12-14, ECF No. 24-6.

Penn's denial of Plaintiff's time extension request could be construed by a reasonable fact finder as a lack of a good faith effort to engage in an interactive process. Penn also presents no evidence that Plaintiff could not have been reasonably accommodated or that accommodating her would have been an "undue hardship." Summary judgment is therefore inappropriate on Plaintiff's failure to accommodate claim.

### c. ADA and ADEA Hostile Work Environment

Plaintiff raises hostile work environment claims under the ADA and ADEA and alleges she was subjected to demeaning and/or discriminatory treatment because of her age and disability. Am. Compl. ¶¶ 18-19, 42-43. To establish a hostile work environment claim, the plaintiff must show: (1) she suffered intentional discrimination because of a protected characteristic; (2) the discrimination was pervasive or pervasive; (3) it detrimentally affected her; (4) it would detrimentally affect a reasonable person in like circumstances and; (5) there is a basis for vicarious liability. *Mandel v. M & Q Packaging Corp.,* 706 F.3d 157,167 (3d Cir. 2013) (citation omitted).

In deciding whether an environment is "hostile," the Court considers "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

---

[4] The letter sent to Plaintiff had an incorrect employee name on the cover sheet. PCOF ¶81.

performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). "The inquiry into whether the discriminatory or retaliatory environment was severe or pervasive recognizes that less severe isolated incidents . . . , when taken together as part of the overall scenario, evidence retaliatory animus and one severe incident may be enough to create a hostile work environment." *Komis v. Sec'y of the United States DOL*, 918 F.3d 289, 293-294) (3d Cir. 2019) (internal quotations omitted). "It suffices to prove that a reasonable person subjected to the discriminatory conduct would find, as plaintiff did, that the harassment so altered working conditions as to make it more difficult to do the job." *Harris* 510 U.S. at 25 (Ginsburg, J., concurring).

Defendants argue that the "innocuous commentary" Plaintiff was subjected to was not objectively harassing nor pervasive or severe. MSJ 25-26, 29. But Plaintiff claims she was subjected to a pattern of hostility and animosity. She points to comments from her colleagues such as: "Emergency nursing isn't for nurses that are older it's for younger nurses."; "Do you think you are able to do your job properly?"; "Don't you think you are too slow now?"; "With all your health problems do you think you should be working?"; "Do you think you can handle an assignment?". PRSOF ¶ 84; PCOF ¶¶ 63, 69; Am. Compl. ¶ 19. She also points to specific comments made by her nurse supervisor Woods and the human resource manager Umili. Woods allegedly said she "prefers younger nurses to work as charge nurses" and Umili allegedly termed Plaintiff a "medical risk." PCOF ¶¶ 60,100; Pl. Dep. D.A. A0708 at 158:17-24; A0709 at 159:7-24, A0823 273:14-23 ECF No. 24-6.

Plaintiff says these types of comments, which persisted for two years on a regular basis, were humiliating and degrading, making her feel like an "old washed-up liability." PBOSJ 31. Taken as a whole, these comments could be construed by the trier of fact as pervasive or severe enough to create a cloud of hostility that could interfere with the work performance of a reasonable

60-year-old employee returning from cancer surgery and/or medical leave. Drawing all reasonable inferences in the light most favorable to the non-moving party and considering that "[s]ummary judgment is to be used sparingly in employment discrimination cases," *Doe v. C.A.R.S. Prot. Plus, Inc.,* 527 F.3d 358, 369 (3d Cir. 2008), the Court finds that there is enough of a factual dispute to survive summary judgment on Plaintiff's hostile work environment claim.

### d. ADA Retaliatory Termination

Plaintiff claims she was unlawfully terminated from her employment in retaliation for her requested accommodations. Am. Compl. ¶ 44. Federal law prohibits an employer from retaliating against an employee for opposing any act made unlawful by the employment discrimination statutes. 42 U.S.C. §12203 (a)-(b). To establish a *prima facie* retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., Plaintiff must show: (1) she engaged in protected employee activity; (2) she suffered adverse action by the employer either after or contemporaneous with this protected activity; and (3) a causal connection between her protected activity and the employer's adverse action. *Krouse v. Am. Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997).

Defendants argue that Plaintiff has failed to produce evidence supporting a genuine dispute of fact as to each element of her *prima facie* case. The Court agrees with Defendants as to the third element, so the Court need not consider Defendants' arguments as to the first and second elements.

A causal connection may be shown by "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007). Plaintiff was terminated on June 25, 2019, almost three months after filing for an accommodation. Am. Compl. ¶¶ 28, 41,43, 44; PRSOF ¶ 77.  Three months is not "unusually

suggestive" timing that would draw a definite conclusion of temporal proximity. *See Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 198 (3d Cir. 2015). "In the retaliation context, although there is no bright line rule as to what constitutes unduly suggestive temporal proximity, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." *Id.*[5] Plaintiff has alleged a gap of three months, without showing more. PBOSJ 23.

Nor does Plaintiff show "a pattern of antagonism" which is a "consistent and continuous" pattern of conduct and can include a "constant barrage of written and verbal warnings" as well as "disciplinary action." *Bartos v. MHM Corr. Servs., Inc.,* 454 F. Appx 74, 79 (3d Cir. 2011) (quoting *Robinson v. Se. Pa. Transp. Auth.,* 982 F.2d 892, 895 (3d Cir. 1993)). Plaintiff fails to offer evidence connecting her protected activity to the adverse action. Evidence showing a consistent and continuous pattern of conduct including a barrage of written and/or verbal warnings and discipline acts, or other such evidence, does not exist. Because the record presents no clear evidence of a causal connection between Plaintiff's accommodation request and her termination, summary judgment is granted to Defendants.

---

[5] *See e.g., Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir. 1989) (inferring causation when discharge occurred two days after employer's notice of Plaintiff's EEOC complaint); *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir. 1997)) ("temporal proximity alone will be insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive.'") *Krouse v. American Sterilizer Co.* 126 F. 3d 494, 503 (3d. Cir. 1997) ("even if timing alone could ever be sufficient to establish a causal link, the timing. . . must be 'unusually suggestive' before a causal link will be inferred"); *Young v. City of Phila. Police Dep't*, 651 Fed Appx 90 (3d Cir. 2016) (citing cases where seven days was held to be "unusually suggestive" and two months was not "unusually suggestive").

### B. ADEA Analysis[6]

#### a. ADEA Age Discrimination

Plaintiff claims she was unlawfully discriminated against because of her advanced age. Am. Compl. ¶¶ 34-36. Defendants focus on their alleged legitimate nondiscriminatory reason for Plaintiff's termination and argue that Plaintiff's ADEA claim fails because she cannot refute the computer-generated evidence presented in their Audit Report. MSJ 24.

For the reasons set forth regarding Plaintiff's ADA claim, the court finds there are genuine issue of material fact refuting the computer generated evidence presented in the Audit Report, i.e. the computer freezing issues and Russo's comments bringing into question the accuracy of the computer data that allegedly validates the firing. Additionally, considering Wood's statement that she prefers to hire younger charge nurses and the alleged replacement of Plaintiff by a 27-year-old nurse,[7] the Court finds that Plaintiff has again met her burden of possible pretext at the third stage in the *McDonnell Douglas* analysis. There is enough evidence of a dispute of material fact to deny summary judgment for Plaintiff's ADEA claim.

---

[6] Under the ADEA, as with the ADA, the plaintiff has the burden of establishing a prima facie case of discrimination. *See Burton v. Teleflex Inc.,* 707 F.3d 417, 426-27 (3d Cir. 2013). Satisfying the *prima facie* case creates an inference of unlawful discrimination. *See Lackey v. Heart of Lancaster Reg'l Med. Ctr.,* 704 Fed. Appx. 41, 45-46 (3d Cir. 2017). And as with the ADA, if the plaintiff succeeds, the burden shifts to the defendant to provide evidence of a legitimate nondiscriminatory reason for the adverse employment decision. *McDonnell Douglas Corp.,* 411 U.S. at 802. Once the defendant meets that burden, the plaintiff must demonstrate that the defendant's proffered reason was a pretext for discrimination. *Id.* at 804; *see also Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Burton,* 707 F.3d at 426-427); *see also Smith v. City of Allentown,* 589 F. 3d 684, 691 (3d Cir. 2009) (affirming that *McDonnell Douglas* applies in ADEA cases involving indirect evidence).

[7] Woods says she replaced Plaintiff's position but "can't recall who replaced her exact position." Woods Dep. D.A. A0281 at 115:10-17. But the record indicates Plaintiff was replaced by a 27-year-old nurse. PCOF ¶ 10.

### C. FMLA Analysis

#### a. FMLA Interference[8]

Plaintiff claims Defendants committed an interference violation of the FMLA by attempting to intimidate her and discourage her use of the FMLA. Am. Compl. ¶¶ 52, 53. To state a claim of interference under the FMLA, a plaintiff must allege that (1) she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which she was entitled under the FMLA. *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014). Put succinctly, to state a claim for interference, an "employee only needs to show that [s]he was entitled to benefits under the FMLA and that [s]he was denied them." *Callison v. City of Philadelphia,* 430 F.3d 117, 119 (3d Cir. 2005); 29 U.S.C. § 2612.

Defendants dispute only element five–arguing that "Plaintiff received all of the FMLA benefits that she was entitled under the statute." MSJ 4. Defendants denied Plaintiff's FMLA leave on April 1, 2019. D.A. A0055. According to the record, Plaintiff was not entitled to any additional leave in 2019. D.A. A0001. The FMLA allows 12 workweeks of leave in any 12-month period. 29 U.S.C. § 2612. Here, Plaintiff took a continuous FMLA leave from October 2018 through January 2019 which exhausted her full 12-week time allowed under the statute. MSJ 4. Plaintiff's denial packet explained that her 12-week FMLA entitlement had been used and suggested she file for accommodation relief instead. D.A. A0056, A0096. Penn approved Plaintiff's requests for FMLA

---

[8] Plaintiff notes in her response brief dated Oct. 2, 2020 that she "is only proceeding on her FMLA retaliation claim but not her FMLA interference claim." PBOSJ 34. But her Amended Complaint dated Nov. 4, 2020 claims FMLA interference so the Court has addressed this claim. Am. Compl. 8.

13

leave on six prior occasions and denied her most recent disputed request only after she had already exhausted her 12-workweek annual entitlement for the year. Arroyo Dep. D.A A1034-A1035 at 59:13-60:3, A1035 at 60:20-23, A1036 at 61:1-7; MSJ 4, 9. Plaintiff provides no counter-evidence outside of her allegations and that is insufficient to survive summary judgment.

Because Plaintiff has provided no evidence showing that she is entitled to additional FMLA leave she is not able to satisfy her *prima facie* case and summary judgment on the FMLA interference claim is granted in favor of Defendants.

### b. FMLA Retaliatory Termination

Plaintiff claims that Defendants committed retaliation violations of the FMLA by terminating her for exercising her FMLA rights and/or taking FMLA qualifying leave; by considering her FMLA leave in making the decision to terminate her; and by engaging in conduct to discourage her from taking FMLA leave. Am. Compl. ¶¶52-53.

The elements of a *prima facie* claim of retaliation under the FMLA are (1) invocation of a right to FMLA leave, (2) an adverse employment action, and (3) a causal link between the two. *Caplan v. L Brands/Victoria's Secret Stores, LLC*, 210 F. Supp. 3d 744, 759 (W.D. Pa. 2016), *aff'd sub nom*. *Caplan v. L Brands/Victoria's Secret Stores,* 704 F. Appx. 152 (3d Cir. 2017).

Defendants only dispute element three. They argue Plaintiff cannot establish that the decision to terminate her employment was causally related to her FMLA leave. Defs.' MSJ ¶ 6. The Court agrees. Plaintiff does not satisfy her *prima face* case because she has not provided evidence of a causal link between her termination and the denial of her FMLA leave.

In the retaliation context, "when there is a brief period between an adverse actor's learning of a plaintiff's protected conduct and a subsequent adverse action, it may be reasonable to infer

that there was a causal link between the two events." *Daniels v. Sch. Dist. of Phila.,* 776 F.3d 181, 197 (3d Cir. 2015).

Plaintiff requested her FMLA leave on April 1, 2019. D.A. A0054, A0059. She was terminated on June 25, 2019, an almost three-month time period between her leave request and her termination. PCOF ¶92. In the context of a retaliation claim, close temporal proximity qualifies as "unusually suggestive" timing. *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014). However, three months is not considered close temporal proximity. "Although there is no bright line rule as to what constitutes unduly suggestive temporal proximity in the retaliation context, a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 198 (3d Cir. 2015); *see also Leblanc v. Hill Sch.,* 2015 U.S. Dist. LEXIS 2981, at *1, (E.D. Pa. Jan. 12, 2015) (a temporal proximity of only 22 days was insufficient to infer causation).

In addition, Plaintiff had taken six prior FMLA leaves since 2007 without incident, with Defendants approving each of those requests. DSOF ¶¶ 81-83, MSJ 9. *See Hernandez v. Temple University,* 2019 U.S. Dist. LEXIS 2853, at *25 (E.D. Pa. Jan. 8, 2019) (finding no retaliatory animus where employer approved without resistance every FMLA leave request that plaintiff had submitted). There appeared to be no problem with issuing Plaintiff another FMLA leave in this case except that she had already taken the time allotted by the statute. In fact, Penn suggested Plaintiff apply for an accommodation because she was out of FMLA leave time. MSJ 19. Because there is no clear indication that Plaintiff's request for an FMLA leave and her termination were causally linked summary judgment will be granted to the Defendants on the FMLA retaliation claim.

## V. CONCLUSION

For the reasons set out in this memorandum, the Court grants summary judgment as to Plaintiff's claims for: (1) ADA retaliation, (2) FMLA retaliation, and (3) FMLA interference. The Court denies summary judgment as to Plaintiff's claims for: (1) ADA discrimination, (2) ADA failure to accommodate, (3) ADA and ADEA hostile work environment, (4) ADEA discrimination, and (5) claims related to the foregoing under the PHRA and PFPO. An appropriate order will follow.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge